UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEMETRIUS N. PITTS, *Pro Se*, | ) | Case Nos.: 1:19 CR 35 |
| | ) | 1:22 CV 2141 |
| Petitioner | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case are the following motions: (1) Petitioner Demetrius Pitts's ("Petitioner" or "Pitts") Motion to Declare the Government in Breach of Plea Agreement (ECF No. 86); (2) Petitioner's Motion for Psychiatric Re-Evaluation (ECF No. 89); (3) Petitioner's Motion to Dismiss the Case (ECF No. 90); Petitioner's Motion Inquiry as to the Date and Time of a Hearing (ECF No. 92); (4) Petitioner's Motions to Appoint Counsel (ECF No. 95, 96, 106); (5) Petitioner's Motion to Vacate Pursuant to 28 U.S.C. § 2255 ("§ 2255 Petition") (ECF No. 97); and (6) Petitioner's Motion for Equitable Tolling (ECF No. 103.)[1] For the following reasons, the court denies all of Pitts's motions.

## I. STATEMENT OF FACTS

### A. Factual Background

---

[1] All document identification numbers in this Order refer to Pitts's underlying criminal case (Case No. 1:19 CR 35).

Pitts is currently serving a 168-month sentence after pleading guilty to multiple charges, including attempting to provide material support to a foreign terrorist organization, and making threats against the President of the United States and members of his immediate family. (Govt.'s Opp. Br. at PageID 1328–29, ECF No. 101) (citing Plea Agreement, ECF No. 43.) After Pitts made multiple remarks on social media expressing extremist, anti-America views—such as a desire to recruit others to kill Americans and encouraging Muslims everywhere to engage in jihadist military-style training—the FBI began monitoring Pitts's social media activity. *See United States v. Pitts*, 997 F.3d 688, 692 (6th Cir. 2021). FBI surveillance uncovered Pitts's affinity for al-Qaeda, including his desire to train with the organization overseas before returning to the U.S. to conduct a terrorist attack. *Id.*

Pitts eventually expressed an interest in meeting with al-Qaeda operatives, so the FBI deployed an undercover agent ("UA" or "agent") masquerading as a member of al-Qaeda to meet with Pitts. *Id.* From mid-June 2018 to early July of that year, Pitts met with individuals he believed to be members of al-Qaeda several times. (*See* Plea Agreement at PageID 266–67, ECF No. 43.) During one of their early meetings, Pitts told the agent that he wanted to kill members of the U.S. military and detailed exactly how he wanted to do so. In a recorded conversation he explained, "I told you my favorite thing is head, hand, hand. ... You take the head and the t[wo] hands and that's how you make your statement. You send it straight to 'em. The person's head and his ... two hands. And they know right off the bat, boy these people ain't playing." *Pitts*, 997 F.3d at 692. He also informed the undercover agent that he wasn't "scared to do it," before adding that he wanted to mutilate then-President Donald Trump, the President's daughter, and the President's son-in-law in this fashion. *Id.*

At a later meeting, Pitts and the agent discussed conducting an attack in downtown Cleveland during the city's Fourth of July parade. A second undercover agent provided Pitts with a cellphone and metrocard for Pitts to scope out the downtown area for the proposed attack. *See id*. at 692–93. Pitts then provided the UAs with pictures and videos of various prominent buildings in downtown Cleveland, as well as video recordings of himself swearing his allegiance to al-Qaeda. *Id*. With the agents, Pitts also discussed which types of vehicles would best conceal and move the explosives to be used during the proposed attacks. *Id.* at 693.

As Pitts and the agents were finalizing plans for the Cleveland attack, Pitts expressed an interest in carrying out other attacks on behalf of al-Qaeda. More specifically, he mentioned traveling to Philadelphia or San Francisco to carry out coordinated attacks, and brought a map of Philadelphia to what would be his last meeting with the UA on July 1, 2018. (*See* Plea Agreement at PageID 267, ECF No. 43.) Pitts had highlighted Philadelphia's city hall and federal building on the city map as ideal targets for subsequent attacks. He further explained that filling a truck with explosives, like in the Oklahoma City bombing, would increase the impact of the attack. *Pitts*, 997 F.3d at 693. To this last meeting, the UA brought a remote-control car filled with explosives and other weapons. Pitts noted that the car would be ideal for slipping past law enforcement undetected. *See id.* Pitts then suggested that they could maximize damage by replacing some of the weapons in the armed vehicle with other artillery, or by making additional explosive cars and gifting them to the children of military personnel. Shortly thereafter, Pitts was arrested by FBI agents. *Id.*

### B.     Procedural Background

On January 16, 2019, a grand jury indicted Pitts with attempting to provide material support or resources to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1). (Indictment,

ECF No. 24.) Less than one month later, on February 12, 2019, a grand jury returned a superseding indictment charging Pitts with: one count of attempting to provide material support to a foreign terrorist organization in violation of 18 U.S.C. § 2339B(a)(1) (Count 1); one count of making threats to the President of the United States in violation of 18 U.S.C. § 871(a) (Count 2); one count of making threats to the President's immediate family in violation of 18 U.S.C. § 879(a)(2) (Count 3); and two counts of making false statements to law enforcement officers in violation of 18 U.S.C. § 1001(a)(2) (Counts 4 and 5). (*See* Superseding Indictment, ECF No. 27.)

Pitts initially pled not guilty to the above charges, but later attempted to enter a plea pursant to an agreement with the United States. (*See* Arraignment Trans. at PageID 351–57, ECF No. 59); (*see also* First Change of Plea Trans., ECF No. 60.) After Pitts denied that he intended to provide material support to al-Qaeda during his first change of plea hearing, the court declined to accept a guilty plea at that time. (*See* First Change of Plea Trans. at PageID 387–91, ECF No. 60.) However, following a series of changes to his court-appointed counsel, on November 5, 2019, Pitts pleaded guilty to Counts 1, 2 and 3 of the superseding indictment. (Govt.'s Opp. Br. at PageID 1329, ECF No. 101) (citing Second Change of Plea Trans. at PageID 591–629, ECF No. 72.) Notably, during his second change of plea hearing, Petitioner informed the court that he had reviewed the case with his latest attorney at the time, and confirmed that he was satisfied with his attorney's advice. (*Id.* at PageID 599–600.) Pitts also informed the court that his attorney had answered some, but not all of his questions. The court then explained that Pitts could ask his additional questions during the hearing. (*Id.*)

At his second change of plea hearing, the Petitioner accepted a sentence of 168 months in exchange for a guilty plea. (*Id.* at PageID 612–14.) As part of his plea agreement, the Petitioner

waived his right to appeal the conviction and sentence in this case, but reserved the right to appeal any sentence above the statutory minimum or the 168 month sentence agreed to under the plea agreement. (*Id.* at PageID 615.) He also preserved the right to bring a claim of prosecutorial misconduct or ineffective assistance of counsel, should those claims exist. (*Id.* at PageID 616.) After reviewing Pitts's waiver rights, the court then went through the Petitioner's plea agreement to confirm that Pitts agreed to the factual basis of the plea. (*See id.* at PageID 617–22.) After the court asked the Petitioner whether he had any further questions, Pitts admitted to the crimes for which he was charged. (*See id.* at PageID 622–24.) He then pled guilty to all three counts of the indictment and the court accepted his plea. (*See id.* at PageID 626.)

Once the court accepted Petitioner's guilty plea, the case was referred to the Pretrial Probation Office to prepare Pitts's Presentence Investigation Report ("PIR") ahead of sentencing. (*Id.* at PageID 627.) During his interview with the probation officer in preparation of his PIR, the Petitioner stated, "I got tied up in this and would not have gotten involved." (Final PIR at PageID 204, ECF No. 40.) In response to this comment, Pitts's attorney explained that "his client was not claiming entrapment by law enforcement." (*Id.*) After the Pretrial Probation Office filed the preliminary PIR with the court on January 3, 2020, the Petitioner had fourteen (14) days to file any objections to the report. (*Compare* Preliminary PIR, ECF No. 39 *with* Final PIR, ECF No. 40.) The Petitioner lodged multiple objections, none of which pertained to his attorney's comments that Pitts was not claiming an entrapment defense. (*See* Final PIR at PageID 225–26, ECF No. 40); *see also Pitts*, 997 F.3d at 696. Ultimately, the court sentenced Pitts to a term of imprisonment consistent with the terms of his plea agreement. On February 11, 2020, Pitts was sentenced to 168 months' imprisonment, to be followed by a lifetime of supervised release, as to Count 1, and 60 months'

imprisonment, to be followed by one year of supervised release, as to Counts 2 and 3. (Judgment, ECF No. 44.) The sentences were to run concurrently. (*Id.*) The court then entered a Judgment in this case on February 14, 2020. (*Id.*)

### C. Direct Appeal

On February 26, 2020, Pitts timely filed a Notice of Appeal before this court regarding the Judgment in his case. (Notice of Appeal, ECF No. 46.) In his direct appeal, Pitts argued that this court erred by accepting his guilty plea and that his sentence was procedurally unreasonable. *Pitts*, 997 F.3d at 697. In support of his first claim, Pitts argued that: (1) there was no factual basis in the record to support his guilty plea; (2) he was incompetent and thus unable to enter a guilty plea; and (3) he did not knowingly enter his guilty plea because he did not understand the charges against him, nor did he understand the waiver of his appellate rights. *Id.* at 697. The Sixth Circuit rejected all of Pitts's arguments and affirmed his conviction and sentence on May 14, 2021. *Id.* at 702.

Pitts's court-appointed attorney then filed a Motion to Withdraw as counsel before the Sixth Circuit, which the circuit court granted on June 14, 2021. (ECF No. 85). In that same order, the Sixth Circuit denied Pitts's Motion to Appoint New Counsel, but granted Pitts an extension until September 13, 2021, to file a petition for rehearing en banc. (*Id.*) However, Pitts did not file a petition for rehearing, nor did he file a petition for certiorari before the Supreme Court. Instead, he filed a series of *pro se* motions before this court.[2] The Sixth Circuit then entered a mandate affirming

---

2      On July 1, 2021, Pitts filed a Motion to Declare the Government in Breach of a Plea Agreement (ECF No. 86). On August 30, 2021, he filed a Motion for Psychiatric Re-Evaluation (ECF No. 89). On September 21, 2021, he filed a Motion to Dismiss the Case (ECF No. 90). On October 18, 2021, Pitts filed a Motion Inquiry as to a Date and Time of a Hearing (ECF No. 92). On February 28, 2022, he filed a Motion to Appoint Counsel (ECF No. 95), as well as two additional Motions to Appoint Counsel on July 26, 2022 and December 20, 2023

this court's judgment on September 21, 2021. (Circuit Mandate, ECF No. 91.) On November 28, 2022, the Petitioner filed a Motion to Vacate his Conviction Pursuant to 28 U.S.C. § 2255. (ECF No. 97.) On January 30, 2023, the Government filed a Response (ECF No. 101) to Pitts's § 2255 Motion, arguing in part that Pitts's petition was untimely. Pitts then filed a Motion for Equitable Tolling (ECF No. 103) of the one-year filing deadline pursuant to 28 U.S.C. § 2255 petitions. The Government filed a brief in opposition to Pitts's Motion for Equitable Tolling. (*See* Govt's Opp. Br., ECF No. 104.)

## II. LEGAL STANDARD

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. 28 U.S.C. § 2255. Section 2255 sets forth four grounds upon which a federal prisoner may base a claim for relief: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *Id.*

Generally, to prevail on a § 2255 petition alleging a constitutional error, the petitioner must show an error of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). To prevail on a non-constitutional error, the petitioner must establish a "'fundamental defect which inherently results in a complete miscarriage of justice', or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v.*

---

(ECF No. 96, 106). Pitts also filed a series of notices and letters before the court. (*See* ECF No. 87, 88, 93, 94, 105).

*Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)). Moreover, in order to obtain this form of collateral relief, "a prisoner must clear a significantly higher hurdle than would exist on direct appeal," *United States v. Frady*, 456 U.S. 152, 166 (1982), because "[o]nce the defendant's chance to appeal has been waived or exhausted . . . we are entitled to presume he stands fairly and finally convicted." *Id*. at 164. Notably, federal law requires prisoners to file a Section 2255 motion within one year of the finalization of their conviction. *See* 28 U.S.C. § 2255(f).

### III. LAW AND ANALYSIS

On November 28, 2022, Pitts filed his § 2255 Petition asking the court to vacate his conviction and sentence alleging ineffective assistance of trial and appellate counsel. Pitts alleges that his trial counsel was ineffective for failing to have his indictment dismissed despite, as Pitts contends, the evidence reflecting that the undercover agents had entrapped him into committing Count 1 of the indictment. (*See* § 2255 Petition at PageID 1294, ECF No. 97.) Pitts also alleges that his trial and appellate counsel were ineffective in failing to inform him that he possessed a viable entrapment defense. (*Id.*) In response, the Government argues that Pitts's § 2255 Petition should be dismissed as untimely. In the alternative, the Government also argues that, even if Pitts's § 2255 Petition were timely, there is no legal basis to support the Petitioner's proposed claims for relief. (*See* Govt.'s Opp. Br. at PageID 1327, ECF No. 101.) In lieu of a reply brief, Pitts filed a Motion for Equitable Tolling of the one-year filing deadline for § 2255 Petitions. Accordingly, the court will first address Petitioner's Motion for Equitable Tolling before moving to the merits of Pitts's Petition.

### A. Motion for Equitable Tolling

Section 2255 motions are subject to a one-year statute of limitations. *See* 28 U.S.C.

§ 2255(f)(1). The limitation period generally runs from the date on which the judgment of conviction becomes final. *Id.*; *see also Cradler v. United States*, 891 F.3d 659, 665 (6th Cir. 2018). However, the doctrine of equitable tolling permits courts to toll part of the limitations period when a petitioner fails to meet this deadline. *Dunlap v. United States*, 250 F.3d 1001, 1004 (6th Cir. 2001) (abrogated on other grounds by *Hall v. Warden Lebanon Corr. Inst.*, 662 F.3d 745, 750 (6th Cir. 2011)). Courts grant equitable tolling "sparingly." *Hall*, 662 F.3d at 749 (citing *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). A defendant's motion is subject to equitable tolling if the movant can demonstrate that (1) he has been diligent in pursuing his rights and (2) extraordinary circumstances prevented him from timely filing his motion. *Holland v. Florida*, 560 U.S. 631, 649 (2010).

### 1. *Diligent Pursuit of Rights*

Pitts argues that he has been diligent in pursuing his rights by filing a number of *pro se* motions before this court regarding his conviction and sentence. Pitts also argues that his confusion regarding the deadline for filing a petition for a writ of certiorari constitute an extraordinary circumstance that warrants equitable tolling of the one-year statute of limitations for habeas petitions. (Mot. for Equitable Tolling at PageID 1359–61, ECF No. 103.) Although Pitts incorrectly filed a litany of motions before this court instead of filing a motion for rehearing before the Sixth Circuit as required, it could be argued that Pitts was diligent in pursuing his rights by attempting, albeit improperly, to challenge the Sixth Circuit's judgment before this court. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (explaining that *pro se* filings should be "liberally construed"); *Simmons v. United States*, 974 F.3d 791 (6th Cir. 2020), *cert. denied*, 142 S. Ct. 23, 24 (2021) (No. 20-1704) (explaining that the Supreme Court's "longstanding instruction" is that *pro se* filings must be construed liberally) (Sotomayor, J. joined by Kagan, J.). However, the court finds Pitts's argument

with respect to the extraordinary circumstances requirement meritless.

### 2. *Extraordinary Circumstances*

First, Pitts contends that by granting him an extension to file a petition for rehearing, the Sixth Circuit tolled the deadline for Pitts to petition the Supreme Court for certiorari. When the Court of Appeals affirms a criminal judgment, but the defendant does not file a petition for a writ of certiorari with the Supreme Court, the defendant's judgment is deemed to be final when the time for filing such a petition expires. *Clay v. United States*, 537 U.S. 522, 525 (2003) ("For the purpose of starting the clock on § 2255's one-year limitation period, we hold, a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction."). Here, the Sixth Circuit affirmed Pitts's conviction on May 14, 2021. At the time, the Supreme Court deadline for filing a petition for a writ of certiorari was 150 days.[3] Because Pitts did not seek a writ of certiorari, the Court of Appeals's judgment became final on October 11, 2021—150 days after the Sixth Circuit affirmed Pitts' conviction. *See id.* at 524–25 (expressly rejecting the notion that the date on which the appellate court issues its mandate, as opposed to the date the court enters its final judgment on direct appeal, triggers the start of the one-year limitation period for habeas petitions). However, Pitts filed his Petition on November 28, 2022, making his Petition untimely.

---

[3] On Monday, July 19, 2021, the Supreme Court rescinded its prior orders from the COVID-19 pandemic extending the deadline for litigants to file petitions for certiorari. *See* July 19, 2021 Order, https://www.supremecourt.gov/orders/courtorders/071921zr_4g15.pdf. Accordingly, the Court ordered that, "in any case in which the relevant lower court judgment, order denying discretionary review, or order denying a timely petition for rehearing was issued prior to July 19, 2021, the deadline to file a petition for a writ of certiorari remains extended to 150 days from the date of that judgment order." *Id.*

Pitts argues that by extending the deadline to file a petition for rehearing en banc, the Sixth Circuit also extended the deadline for Pitts to file a petition for a writ of certiorari. That is not the case, particularly when the law makes clear that the deadline for defendant to file a habeas petition is one year after the judgment of conviction becomes final—not when the deadline to file a petition for rehearing expires. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 426–27 (6th Cir. 2000) ("As a general matter, convictions become final upon conclusion of direct review. When a federal criminal defendant takes a direct appeal to the court of appeals, his judgment of conviction becomes final for § 2255 purposes upon the expiration of the 90–day period in which the defendant could have petitioned for certiorari to the Supreme Court, even when no certiorari petition has been filed.") (citations omitted). The court finds that, even if it were to determine that Pitts was diligent in pursuing his rights, his claim that extraordinary circumstances prevented him from timely filing his § 2255 Petition is without merit. Accordingly, the court concludes that Pitts's Petition should be dismissed as untimely. While the court concludes that Pitts's Petition can be dismissed as untimely, it will still consider its merits.

**B.     Merits**

A federal prisoner may assert a claim for ineffective assistance of counsel "in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). To establish ineffective assistance of counsel, the petitioner must satisfy the two-prong test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner satisfies the "performance prong" by showing that his attorney's representation "fell below an objective standard of reasonableness." *Id.* at 688. The "prejudice prong" is met when a petitioner shows "that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. *See also Ballard v. United States*, 400 F.3d 404, 407 (6th Cir. 2005).

     1.  *Failure to Advise of Entrapment Defense*

  Courts reviewing a lawyer's performance begin their consideration with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689). In the Sixth Circuit, courts "must be highly deferential," and make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Ballard*, 400 F.3d at 407 (quoting *Carver v. Straub*, 349 F.3d 340, 348-49 (6th Cir. 2003)). To satisfy the performance prong, Pitts "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *O'Hara*, 24 F.3d at 828. Generally, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable..." *Strickland*, 466 U.S. at 690.

  Pitts claims that his trial counsel was ineffective "for advising Pitts to plead guilty because by pleading guilty Pitts waived his right to present either a substantive or objective entrapment defense." (§ 2255 Petition at PageID 1297.) Pitts contends that had a valid entrapment defense and trial counsel erred by not advising him of it. (*Id.*) In response, the Government points to the record, citing Petitioner's Plea Agreement through which "Pitts agreed that his attorney had advised him of possible defenses," as well as Petitioner's interview for his presentence investigation report during which Pitts's counsel told the Probation Officer his client was not asserting an entrapment defense.

-12-

(Govt.'s Opp. Br. at PageID 1339-40.) The Government also asserts that the facts of the case "would not have supported an entrapment defense, regardless of whether or not Pitts' attorney specifically advised him about the possibility of claiming entrapment by law enforcement." (*Id.* at PageID 1340.) The Government's argument is well-taken.

In the context of whether to pursue a potential defense, the conduct Pitts challenges here, *Strickland* provides an example:

> [W]hen the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

*Id.* Based on the record, it appears Petitioner's trial counsel considered and ultimately rejected pursuing an entrapment defense, and that Petitioner was aware of his counsel's choice. For instance, at his second change of plea hearing, Petitioner informed the court that he had reviewed the case with his latest attorney at the time, and confirmed that he was satisfied with his attorney's advice. (Second Change of Plea Trans. at PageID 599–600, ECF No. 72.) The record also reflects that Pitts's attorney had mentioned an entrapment defense to his client. When interviewed by the probation officer in preparation for sentencing, the Petitioner stated, "I got tied up in this and would not have gotten involved." (Final PIR at PageID 204, ECF No. 40.) In response, Pitts's attorney explained to the probation officer that "his client was not claiming entrapment by law enforcement."(*Id.*)

Pitts provides no evidence showing trial counsel did not consider whether Pitts should pursue an entrapment defense. Instead, he offers unsupported "facts" supposedly demonstrating he had a viable entrapment defense to claim his counsel should have advised him of the defense. (*See* § 2255

Petition at PageID 1303–07.) This unsworn testimony without more does not defeat the presumption that, under the circumstances, Petitioner's counsel made a strategic choice to forgo an entrapment defense in Petitioner's case. Accordingly, the court finds that Petitioner's counsel's decision against pursuing an entrapment defense did not fall below an objective level of reasonableness.

Because Pitts does not satisfy the "performance prong" the court need not address the "prejudice prong" on Petitioner's first ineffective assistance of counsel claim. *See Smith v. Mitchell*, 348 F.3d 177, 199 (6th Cir. 2003) (explaining that a court deciding an ineffective assistance of counsel claim does not have to address both prongs if the defendant fails to establish one.)

### 2. *Failure to Object to Material Support Enhancement*

Pitts next claims that his trial counsel was ineffective for failing to object to the terrorism sentencing enhancement. (§ 2255 Petition at PageID 1308.) This failure, Pitts contends, prejudiced him because the improperly applied enhancement raised his base level offense, thereby placing him in a longer sentencing range. (*Id.* at 1313–14.) The Government asserts Petitioner's claim lacks merit because (1) Pitts's claim actually attacks the factual basis for his conviction, and he cannot raise the argument again after pursuing it on direct appeal; (2) the record supports application of the sentencing enhancement; and (3) even if Pitts had a valid objection, counsel's strategic decision agreeing to its application meant Pitts received a shorter sentence than that called for by the advisory sentencing guidelines. (Govt.'s Opp. Br. at PageID 1348–51.) The court finds that Petitioner's second ineffective assistance claim also fails the *Strickland* analysis.

When a petitioner's ineffective assistance of counsel claim challenges counsel's performance during sentencing, "the prejudice inquiry requires the defendant to demonstrate 'a reasonable probability that, but for counsel's errors, [his] sentence would have been different.'" *Figura v.*

*United States*, No. 21-1352, 2021 WL 8082964 at *1 (6th Cir. Oct. 15, 2021) (quoting *Weinberger v. United States*, 268 F.3d 346, 352 (6th Cir. 2001)). Here, Pitts cannot satisfy the prejudice prong because the sentencing enhancement applies, thus even if Pitts's counsel had objected, the enhancement was lawful.

Section 3A1.4 of the United States Sentencing Guidelines provides that "[i]f the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32." U.S.S.G. § 3A1.4. For purposes of § 3A1.4, "federal crime of terrorism" has the same meaning as provided in 18 U.S.C. § 2332b(g)(5). *Id.* at App. Note 1. 18 U.S.C. § 2332b(g)(5) defines "federal crime of terrorism" as "an offense that (A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct;" and (B) is a violation of one of the enumerated offenses in the statute. 18 U.S.C. § 2332b(g)(5)(A)–(B). Here, Pitts pled guilty to one count of Attempt to Provide Material Support or Resources to a Foreign Terrorist Organization in violation of 18 U.S.C. § 2339B(a)(1). (*See* Plea Agreement at PageID 262, ECF No. 43.) This offense is one of the enumerated crimes in the definition of "federal crime of terrorism." *See* § 2332b(g)(5)(B)(i). Accordingly, the terrorism enhancement was properly applied to Petitioner's sentence because the underlying felony was a "federal crime of terrorism." *See also United States v. Pitts*, 997 F.3d 688 (6th Cir. 2021) (affirming Petitioner's conviction on direct appeal and holding that his plea agreement was valid.)

Because the terrorism enhancement was properly applied to Pitts's sentence, he cannot demonstrate that any allegedly deficient performance by trial counsel in failing to object to the enhancement was prejudicial. Thus, Petitioner's second claim fails.

-15-

### C. Additional Motions

In addition to filing his § 2255 Petition and Motion for Equitable Tolling before the court, Pitts filed several other motions before this court after the Sixth Circuit affirmed Pitts's conviction. (*See* ECF Nos. 86, 89, 90, 92, 95, 96, 106). In his Motion for Equitable Tolling (ECF No. 103), Pitts argued that his Motion to Declare the Government in Breach of the Plea Agreement (ECF No. 86) and his Motion to Dismiss (ECF No. 90) should be construed as a request for rehearing en banc and should have been transferred to the Sixth Circuit. (Mot. for Equitable Tolling at PageID 1362.) While *pro se* filings should be liberally construed, the court declines to apply such a broad interpretation to these Motions given none refer to the Sixth Circuit's judgment, and neither request relief in a way that resembles a request for rehearing. (*See* Mot. to Declare Gov't in Breach at PageID 1238, ECF No. 86) ("Government's breach of contract (plea) affords DEMETRIUS grant of relief and release from illegal contract No. 1:19cr35...") (emphasis in original); (*See* Mot. to Dismiss at PageID 1265, ECF No. 90) ("Petitioner, is aware there are other items before the court, on the docket to be heard. Yet. This matter is pressing and very prevalent, as to setting the RECORD STRAIGHT/correct, because EVIDENCE is not present to sustain the conviction, SENTENCE, or judgment dealing with TRUST, and, hereby, should be dismissed.") (emphasis in original.) Accordingly, the court denies Petitioner's Motion to Declare Government in Breach of Plea Agreement and Motion to Dismiss as moot. The court also denies as moot Petitioner's Motion for Psychiatric Re-Evaluation (ECF No. 89) because such an evaluation is not applicable to any post-conviction proceeding Pitts has or may have before this court. Having denied Petitioner's Motion to Declare Government in Breach (ECF No. 86), Motion to Dismiss (ECF No. 90), and Motion for Psychiatric Re-Evaluation (ECF No. 89), the court also denies as moot Pitts's Motion Inquiry as to

Date and Time of Hearing (ECF No. 92) because it pertains to the denied motions.

Petitioner's Motions to Appoint Counsel (ECF Nos. 95, 96, 106) are also denied. A court may appoint counsel for any financially eligible person seeking relief under § 2255 if "the court determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). However, counsel must be appointed to a qualifying petitioner in a § 2255 proceeding if the court determines that an evidentiary hearing is warranted. *Young v. United States*, No. 15-4063, 2017 WL 4358942 at *1 (6th Cir., Feb. 28, 2017) (explaining the application of Rule 8(c) of the Rules Governing Section 2255 Proceedings.) A court can only determine whether an evidentiary hearing is necessary after a petitioner files a timely § 2255 motion. *See United States v. Mullikin*, Nos. 5:06-cr-115-JMH-EBA-1; 5:05-cr-162-JMH-JGW-1, 2019 WL 2997834 at *2 (E.D. Ky., July 9, 2019). Thus motions to appoint counsel should be denied as premature if filed before a timely § 2255 petition. *Id.* (denying movant's *pro se* motions to appoint counsel before movant filed § 2255 petition). Here, Petitioner's first two Motions to Appoint Counsel (ECF Nos. 95, 96) were filed before his § 2255 Petition. Thus, the court denies Pitts's first two Motions to Appoint Counsel. Pitts's third Motion to Appoint Counsel (ECF No. 106) was filed more than a year after his § 2255 Petition, but the court denies it as moot because Pitts's Petition was untimely. *See* discussion *supra* pg. 8–11. Accordingly, all of Pitts's Motions to Appoint Counsel are denied.

### IV. CONCLUSION

For the foregoing reasons, the court hereby denies the following motions: (1) Petitioner's Motion to Declare the Government in Breach of Plea Agreement (ECF No. 86); (2) Petitioner's Motion for Psychiatric Re-Evaluation (ECF No. 89); (3) Petitioner's Motion to Dismiss the Case (ECF No. 90); Petitioner's Motion Inquiry as to the Date and Time of a Hearing (ECF No. 92); (4)

Petitioner's Motions to Appoint Counsel (ECF No. 95, 96, 106); (5) Petitioner's Motion to Vacate Pursuant to 28 U.S.C. § 2255 ("§ 2255 Petition") (ECF No. 97); and (6) Petitioner's Motion for Equitable Tolling (ECF No. 103.) The court also certifies that there is no basis upon which to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

    IT IS SO ORDERED.

                                                */s/ SOLOMON OLIVER, JR.*
                                                UNITED STATES DISTRICT JUDGE

January 3, 2025